## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

MELISSA LITKE,

     Plaintiff,

v.                                                          Case No. 3:23-cv-1266-MMH-PDB

P.B. EXPRESS, INC.
& DAE KEE YUN,

     Defendants.

_____

# <u>O R D E R</u>

**THIS CAUSE** is before the Court on Defendants' Motion to Dismiss

Third Amended Complaint with Prejudice and Memorandum of Law (Doc.

64; Motion), filed on July 26, 2024.[1] In the Motion, Defendants, P.B. Express,

Inc. (PBE) and Dae Kee Yun, seek dismissal of all claims set forth in Plaintiff's

Amended Complaint Per Order of the Court, Doc. 49 (Doc. 58; Operative

Complaint), filed on July 12, 2024. On the day she filed the Operative

---

[1] Confusingly, Defendants call the operative complaint the "Third Amended Complaint," stating that they are "[c]ounting the pleading (Doc. 11) that [Litke] filed with" a motion to amend her original complaint, (Doc. 4; Complaint), filed on October 26, 2023. Motion ¶ 20. But as explained further in Section I, <u>infra</u>, the operative complaint is Litke's second amended complaint because the Court denied Litke's first motion to amend her Complaint, Plaintiff's Motion to Amend Original Claim (File #178717733, Circuit Civil, Fourth Judicial, Duval County Claim #16-2023-CA-009827 Div CV-E) (Doc. 11; First Motion to Amend), filed on November 20, 2023, <u>see</u> Order (Doc. 26; Order Denying Litke's Initial Motions), entered on December 15, 2023. So, the complaint Litke attached to the First Motion to Amend was never properly before the Court.

Complaint, and on the following day, Plaintiff, Melissa Litke, filed three documents each captioned Notice of Service of Supporting Documents to the Amended Complaint. See (Doc. 59; Exhibit 1), filed on July 12, 2024; (Doc. 60; Exhibit 2), filed on July 13, 2024; (Doc. 61; Exhibit 3), filed on July 13, 2024; (Docs. 59–61 collectively; Exhibits).[2] The Exhibits consist of 51 pages of emails, text messages, a lease, and other documentation, some of which is annotated with Litke's comments. See generally Exhibits. On August 10, 2024, Litke filed a response to Defendants' Motion. See Plaintiff's Response to "Defendants' Motion to Dismiss Third Amended Complaint with Prejudice and Memorandum of Law" Doc. 64 (Doc. 66; Response).[3] With leave of the Court, Defendants filed

---

[2] In ruling on the Motion, the Court's consideration is limited to those facts contained in the Operative Complaint and the Exhibits. Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1199 (11th Cir. 2007). Under Federal Rule 10(c), "attachments are considered part of the pleadings for all purposes, including a Federal Rule 12(b)(6) motion." Solis-Ramirez v. U.S. Dep't of Justice, 758 F.2d 1426, 1430 (11th Cir. 1985); see also Federal Rule 10(c) (the exhibits are part of the pleading "for all purposes"). Additionally, "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." Griffin Indus., 496 F.3d at 1206. Given Litke's pro se status and her apparent intent to include these documents in the Operative Complaint, the Court considers the Exhibits to be attached to the Operative Complaint.

[3] Litke attaches another document to her Response. See Plaintiff's Disclosure of Evidence (Doc. 66-1; Response Exhibits). The Response Exhibits include a public records request about Litke's voter registration and an email to Defendants' counsel. See generally Response Exhibits. But, as explained in note 2, supra, "[g]enerally, when considering a motion to dismiss, the district court must limit its consideration to the [complaint] and any exhibits attached to it." Baker v. City of Madison, 67 F.4th 1268, 1276 (11th Cir. 2023). "If the parties present, and the court considers, evidence outside the pleadings, the motion to dismiss generally must be converted into a motion for summary judgment." Id. Here, while Litke asks the Court several times to "consider Summary Judgment," see, e.g., Response at 14, summary judgment is premature given no answer has even been filed. See Johnson v. City of Atlanta, 107 F.4th 1292, 1298 (11th Cir. 2024) ("[I]f [a court] treats the motion [to dismiss] as one for

a reply. See Defendants' Reply to Plaintiff's Response to Motion to Dismiss Third Amended Complaint, (Doc. 71; Reply), filed on August 20, 2024. Accordingly, this matter is ripe for review.

## I.   Background[4]

Although the Operative Complaint is difficult to follow, the Court understands Litke to allege the following facts. Litke is a truck driver, and PBE is a motor carrier that "operates a terminal Logistics yard" in Jacksonville, Florida (the Jacksonville Terminal). Operative Complaint at 3–4.[5] PBE is an

---

summary judgment, the court must give a reasonable opportunity for the parties to present all evidence that is relevant to the motion."). In consideration of the procedural posture of the case, the Court declines to consider the content of the Response Exhibits.

In an abundance of caution, the Court addresses the argument Litke makes to opposing counsel in an email included in the Response Exhibits. See Response Exhibits at 8–12. In the email, Litke appears to argue that the Court lacks subject-matter jurisdiction because Litke has reduced her demand to below the jurisdictional threshold for diversity jurisdiction. See id. at 9–11; see also Operative Complaint at 2 ("[T]he dispute is less than $75,000 … ."). Despite this, the Court remains satisfied of its subject-matter jurisdiction because the amount-in-controversy threshold for a case removed to federal court is determined at the time of removal. See Poore v. American-Amicable Life Ins. Co., 218 F.3d 1287, 1291 (11th Cir. 2000) overruled in part on other grounds in Alvarez v. Uniroyal Tire Co., 508 F.3d 639, 640–41 (11th Cir. 2007) ("[E]vents occurring after removal which may reduce the damages recoverable below the amount in controversy requirement do not oust the district court's jurisdiction."). And, at the time of removal, Litke was seeking over $75,000 in damages. See Notice of Removal (Doc. 1; Notice), filed on October 24, 2023, at 14.

[4] In considering the Motion, the Court must accept all factual allegations in the Operative Complaint as true, consider the allegations in the light most favorable to Litke, and accept all reasonable inferences that can be drawn from such allegations. See Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa County, 21 F.3d 1531, 1534 (11th Cir. 1994). As such, the facts recited here are drawn from the Operative Complaint and Exhibits and may well differ from those that ultimately could be proved.

[5] Throughout this Order, document page numbers refer to the page numbers generated by the Court's Electronic Filing System (CM/ECF).

Ohio corporation. Id. at 2. Yun, who lives in Ohio, is the President and/or the CEO of PBE. Id. at 3, ¶ 10. Litke and PBE entered into a lease. Id. ¶ 11; see Agreement for Services and Lease of Equipment (Exhibits 1-A; Lease). Jeanie Cooke, the manager of the Jacksonville Terminal, signed the Lease on behalf of PBE. Operative Complaint ¶ 11.

Under the Lease, Litke leased her tractor to PBE and provided services to PBE as a driver. Lease at 3, 11–12. The Lease states, "[Litke] will accept computer-generated documentation in support of payment of compensation." Id. at 4.[6] The Lease also provides that PBE "will, as required by government regulations[,] report amounts paid" to Litke. Id. at 7. But Litke "was never provided" documentation until she requested it. Operative Complaint ¶ 14. And the documentation she was provided lacked certain information and as a result was "not in keeping with the standard of the industry." Id. ¶ 15.

On April 20, 2021, PBE expected Litke to drive hours that, according to Litke, violated federal regulations which require motor carriers to ensure that their drivers can take periods of rest between loads. Id. ¶¶ 17–21. On April 28, 2021, Litke visited the Jacksonville Terminal to inquire about receiving pay statements. Id. ¶ 22. "A misunderstanding occurred and without

---

[6] The language in the Lease differs from the language Litke provides in the Operative Complaint. See Operative Complaint ¶ 12. The difference is not material to resolving the Motion.

justification, … Cooke stormed out in the yard after [Litke], violently hostile, yelling profanities at [Litke] calling them a 'piece of shit driver,' and cut off the gate code access to [Litke] … . [Litke] went back to rationalize with [Cooke], but [Litke] was locked out of the office." Id. (footnote omitted). To discuss the situation with Cooke, Litke "called the Safety Officer in Savannah GA, Keith Napier, who stated 'everyone calls him' for these issues. … [Napier] referred [Litke] to Andee Hughes, the Regional Terminal Manager in Ohio." Id. ¶ 23. Litke reported her concerns to Hughes. Id. ¶ 24. Later, Litke called Cooke, who "wouldn't let [Litke] get a word in and berated [Litke] until [Cooke] hung up and blocked" Litke's number. Id. ¶ 25. Litke again tried to bring her concerns about Cooke to other management, but nothing was done. Id. ¶ 26.

A few days later, Cooke told Litke that there was no more work available for her at the Jacksonville Terminal, but that she could "run out of" a terminal in Savannah instead. Id. ¶ 27. Cooke then "cut off [Litke's] fuel card." Id. ¶ 28. Cooke, Napier, and a third PBE employee then planned a run for Litke out of Savannah. Id. ¶¶ 28, 32–33; (Exhibits 1-H-1; May 2 Email). In early May 2021, Napier and Cooke told Litke that the Lease was terminated and to return all PBE equipment from her tractor. Operative Complaint ¶¶ 36–37. Litke agreed to terminate the Lease. Id. ¶ 45. However, a dispute arose about whether Litke returned the equipment. Id. ¶¶ 36–39. Cooke and another PBE employee filed

a police report for stolen equipment worth $99. <u>Id.</u> ¶ 39; Exhibit 3 at 2. According to Litke, this police report is "false." Operative Complaint ¶ 39. Indeed, when the Lease was terminated, PBE owed Litke "$3,000+ in wages and $1,000" in escrow. <u>Id.</u> ¶ 40. As of the filing of the Operative Complaint, the escrow amount still has not been paid, <u>id.</u> ¶ 46, Litke still has not received accounting documentation, <u>id.</u>, and she still has not been paid the wages she is owed, <u>id.</u> at 1, ¶ 4.

Litke began this action against PBE and Yun by filing a Complaint in state court on August 1, 2023. Complaint at 1. As with the Operative Complaint, Litke included 51 pages of exhibits with the Complaint. <u>See</u> (Doc. 4-1; State Court Complaint Exhibits). PBE and Yun removed the case to this Court on October 24, 2023. Notice at 1. Between October and December 2023, PBE and Yun moved to dismiss, <u>see</u> (Docs. 7, 8, 13), and Litke filed nine motions seeking various forms of relief, <u>see</u> (Docs. 9–11, 15, 18, 22–25).

On December 15, 2023, the Magistrate Judge denied all of Litke's then-pending motions. <u>See</u> Order Denying Litke's Initial Motions ¶¶ 1–4. In the Order Denying Litke's Initial Motions, the Magistrate Judge explained that in filing the motions, Litke violated Local Rules 1.08, 3.01(d), and 3.01(g). <u>Id.</u> ¶¶ 1–4. The Magistrate Judge observed, "The plaintiff has filed more than a half dozen motions concerning the information the defendant filed to support

this Court's diversity jurisdiction over the lawsuit. … Continued abuse of the judicial process in this manner may result in sanctions, including dismissal of this action." Id. ¶ 2. The Magistrate Judge also ordered Litke to amend her Complaint, directing Litke to comply with the Local Rules and with the Federal Rules of Civil Procedure (Federal Rule(s)). Id. ¶ 4. To help Litke prepare her amended complaint, the Magistrate Judge listed seven requirements an amended complaint must satisfy, including that the complaint provide "a short and plain statement"; that each allegation be "simple, concise, and direct"; that the complaint separate each claim into a separate count; and ultimately, that Defendants "be able to read the amended complaint and know for certain" the claim(s) "the plaintiff is bringing" and "the core alleged facts supporting" the claim(s). Id. The Magistrate Judge counseled, "Attaching to a pleading all evidence a plaintiff contends supports a claim is unusual and unnecessary and detracts from the 'short and plain' requirements." Id. The Magistrate Judge also reminded Litke of free legal resources available to unrepresented litigants and gave her instructions for how to access these resources. Id. ¶ 5.

On January 12, 2024, Litke filed her first attempt at a proper amended complaint. See Plaintiff's Amended Complaint Per Order of the Court, Doc. 26 (Doc. 30; First Amended Complaint). Despite the Magistrate Judge's instruction that attaching extensive evidence detracts from Federal Rule 8(a)(2)'s "short

and plain statement" requirement, Litke included 57 pages of exhibits (all the same exhibits as before, plus a 6-page "cover letter" containing correspondence between Litke and opposing counsel). <u>See</u> (Docs. 30-1–30-16). PBE again moved to dismiss the pleading. <u>See</u> P.B. Express, Inc.'s Motion to Dismiss (Second) Amended Complaint with Prejudice and Memorandum of Law (Doc. 35), filed on February 5, 2024. Litke responded and moved for summary judgment. <u>See</u> Plaintiff's Response to Defendant's "P.B. Express, Inc.'s Motion to Dismiss (Second) Amended Complaint with Prejudice and Memorandum of Law" Doc. 35 (Doc. 37), filed on February 20, 2024; Plaintiff's Motion for Summary Judgment (Doc. 39), filed on March 14, 2024. On May 24 and 29, 2024, Litke filed four documents captioned "Notice of Service" of various discovery requests. <u>See</u> (Docs. 44–47). The Magistrate Judge ordered these documents removed from the docket because filing these documents violated Federal Rule 5(d)(1) and the Middle District Discovery Handbook. <u>See</u> Order (Doc. 48).

Rather than ruling on Litke's and PBE's dispositive motions, the Court <u>sua sponte</u> struck Litke's First Amended Complaint as a shotgun pleading on June 14, 2024. <u>See</u> Order (Doc. 49; Order Striking the First Amended Complaint) at 1. The Court spent six pages explaining how the rules prohibiting shotgun complaints apply to <u>pro se</u> litigants and describing in detail the deficiencies in Litke's First Amended Complaint. <u>Id.</u> at 2–7. The Court then

stated, "The Court will provide Litke with **<u>one final opportunity</u>** to properly draft her pleadings. Litke is cautioned that failure to comply with the requirements of the Court's Order and the Federal Rules of Civil Procedure may result in the dismissal of this action without further notice." <u>Id.</u> at 7 (emphasis in original). Notably, the Court again directed Litke to free resources available to <u>pro</u> <u>se</u> litigants. <u>Id.</u> at 7–8 n.4.

The Operative Complaint is Litke's attempt to comply with the Order Striking the First Amended Complaint. Operative Complaint at 1. In the Operative Complaint, Litke asserts eleven "causes of action" against PBE and Yun. <u>Id.</u> ¶¶ 47–57. As best the Court can tell, the claims are for breach of contract, <u>id.</u> ¶¶ 47, 48; various theories of negligence, <u>id.</u> ¶¶ 49, 52, 54, 57; various intentional torts, <u>id.</u> ¶¶ 50, 51, 55, 56; and hostile work environment, <u>id.</u> ¶ 53.[7] In six of these counts, Litke expressly incorporates other counts of her pleading. <u>Id.</u> ¶¶ 50–53, 56, 57. But it is difficult for the Court to determine which factual allegations Litke intends to incorporate into which claims because she incorporates allegations by listing pages (which themselves contain several numbered paragraphs), paragraphs, and sections, and it's unclear how to

---

[7] According to Litke, PBE also violated various statutes and regulations that apply to the trucking industry. <u>See, e.g.</u>, Operative Complaint ¶ 2 (alleging violations of 49 C.F.R. §§ 379, 396.7, etc.). But Litke does not appear to assert that any of these statutes or regulations create a private cause of action.

interpret the lists. For example, in her "First Cause of Action" in ¶ 47, Litke appears to incorporate pages 7–8 of the Operative Complaint, "Section I, ¶¶ 12–16 & pp. 16–18, Section III, ¶¶ 41–42 & 46 and Exhibits." Id. ¶ 47. Throughout the Operative Complaint, Litke incorporates paragraphs 12–22, 27–42, and 46, see id. ¶¶ 47–57, but this leaves paragraphs 1–11, 23–26, and 43–45 not referenced or incorporated in any of the counts. Every count but the eighth and ninth also expressly incorporate the "Exhibits" without referring to any pages or individual documents contained in the 51 pages of Exhibits. See id. ¶¶ 47–57.

In the Motion, PBE and Yun argue that the Operative Complaint should be dismissed because it remains an impermissible shotgun pleading and "fail[s] to state a claim upon which relief can be granted." Motion at 1. Yun also moves to dismiss under Federal Rule 12(b)(2) for lack of personal jurisdiction. Id. In the Response, Litke addresses few of PBE and Yun's substantive arguments, and instead directs the Court's attention to various other matters.[8]

---

[8] For example, in the Response, Litke spends two pages explaining that Defendants have not served her with the Motion or any other documents since July 26, 2024. Response at 3–4. Litke states that Defendants are "using this to their advantage, through trickery, preventing [Litke] timely filing notices." The Court fully considers Litke's Response despite any timeliness issues.

Litke spends much of her Response explaining her view that various factual statements Defendants make in the Motion are false and extolling the voluminous evidence she provided in the Exhibits and elsewhere. See, e.g., Response at 5–10. Because the Court finds it inappropriate to proceed to the merits of her claims, the veracity of her factual allegations is moot.

## II.   Discussion

A. Personal Jurisdiction[9]

1.  Legal Standard

In considering a motion to dismiss for lack of personal jurisdiction under Federal Rule 12(b)(2), the "plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." See United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009). Where a defendant "challenges jurisdiction by submitting affidavit evidence in support of its position, 'the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.'" See id. (quoting Meier ex rel. Meier v. Sun

---

Litke also describes various perceived failures of Defendants' counsel's conduct and asks the Court to sanction Defendants. See, e.g., Response at 12–15. Litke's request for affirmative relief in her Response to the Motion is improper. See Federal Rule 7(b)(1) ("A request for a court order must be made by motion."); see also Local Rule 3.01. As such, the Court does not consider the request.

Litke also directs attention to jurisdiction, but rather than addressing Yun's personal jurisdiction argument, she explains various bases of subject-matter jurisdiction and venue. Response at 15–18. But neither subject-matter jurisdiction nor venue have been questioned by Defendants or the Court.

[9] Yun might prefer the Court bypass personal jurisdiction upon a finding that the Operative Complaint is due to be dismissed with prejudice on other grounds. But the Court must address the personal jurisdiction issue first, and upon a finding that the Court lacks personal jurisdiction over Yun, the Court may not adjudicate any of the claims against him. See Madara v. Hall, 916 F.2d 1510, 1514, 1520 (11th Cir. 1990) (vacating the part of a district court order that dismissed a complaint on substantive grounds, and affirming the part of the order that dismissed the complaint on personal-jurisdiction grounds).

Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002)). In ruling on a motion to dismiss for lack of personal jurisdiction, a district court has discretion to conduct an evidentiary hearing. See Delong Equip. Co. v. Wash. Mills Abrasive Co., 840 F.2d 843, 845 (11th Cir. 1988). However, where the court does not conduct a hearing, "the plaintiff must present only a prima facie showing of … personal jurisdiction." Id.

A plaintiff makes a prima facie showing of personal jurisdiction by presenting evidence sufficient to withstand a motion for directed verdict on the issue of personal jurisdiction. Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988). Thus, "[t]he district court must construe the allegations in the complaint as true, to the extent they are uncontroverted by defendant's affidavits," and "where the evidence presented by the parties' affidavits … conflicts, the court must construe all reasonable inferences in favor of the non-movant plaintiff." Id. (citing Delong Equip. Co., 840 F.2d at 845); see also United Techs. Corp., 556 F.3d at 1274 (citing Polski Linie Oceaniczne v. Seasafe Transp. A/S, 795 F.2d 968, 972 (11th Cir. 1986)) (noting that, if the defendant rebuts the jurisdictional allegations in the plaintiff's complaint, "the plaintiff is required to substantiate [its] jurisdictional allegations … by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint").

2. Analysis[10]

In considering a motion to dismiss for lack of personal jurisdiction under Federal Rule 12(b)(2), courts conduct a two-part analysis. First, the Court must determine "whether the applicable statute potentially confers jurisdiction over the defendant … ." Republic of Pan. v. BCCI Holdings (Lux.) S.A., 119 F.3d 935, 942 (11th Cir. 1997). While federal statutes can confer jurisdiction by providing for service of process, in the absence of such a statute, the Court turns to the law of the state where the Court is located. See Delong Equip. Co., 840 F.2d at 847; Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 626–27 (11th Cir. 1996) ("When jurisdiction is based on a federal question arising under a statute that is silent regarding service of process, [Federal] Rule 4(e) … directs us to look to the state long-arm statute in order to determine the existence of personal jurisdiction."); see also Walden v. Fiore, 571 U.S. 277, 283 (2014). Second, the Court must consider whether exercising personal jurisdiction over Defendants

---

[10] The Supreme Court distinguishes between two types of personal jurisdiction: "specific or case-linked jurisdiction and general or all-purpose jurisdiction." See BNSF Ry. Co. v. Tyrell, 581 U.S. 402, 413 (2017). "Specific personal jurisdiction is founded on a party's contacts to the forum state that are related to the cause of action." See Delong Equip. Co., 840 F.2d at 853. Whereas "[g]eneral personal jurisdiction arises from a party's contacts to the forum state that are unrelated to the litigation; the test for general jurisdiction is whether the party [has] had 'continuous and systematic' general business contacts with the forum state." Id. (quoting Perkins v. Benquet Consol. Mining Co., 342 U.S. 437, 438 (1952)). Because Litke fails to address personal jurisdiction in either the Operative Complaint or in her Response, it is unclear whether she intends to rely on general or specific personal jurisdiction. Given the sparse allegations about Yun in the Operative Complaint, it appears that only the propriety of specific personal jurisdiction is at issue.

"would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction over the defendant does not offend 'traditional notions of fair play and substantial justice.'" Mut. Serv. Ins. Co. v. Frit Indus., Inc., 358 F.3d 1312, 1319 (11th Cir. 2004) (quoting Sculptchair, Inc., 94 F.3d at 626). "'Only if both prongs of the analysis are satisfied may a federal or state court exercise personal jurisdiction over a nonresident defendant.'" Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 256 (11th Cir. 1996) (quoted authority omitted).

The Florida long-arm statute provides:

> A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of [a list of enumerated actions].

Fla. Stat. 48.193(1)(a). Among others, the enumerated actions include conducting business in Florida (subsection (1)(a)(1)), committing torts in Florida (subsection (1)(a)(2)), and breaching a contract by failing to perform acts required by the contract to be performed in Florida (subsection (1)(a)(7)). See Fla. Stat. 48.193(1)(a)(1)–(9). Notably, when the enumerated action is itself a cause of action, a court ordinarily must determine whether the plaintiff states a claim for that cause of action against a particular defendant before

determining whether the cause of action arises out of one of the enumerated actions such that it will support the exercise of personal jurisdiction. See 8100 R.R. Ave. Realty Trust v. R.W. Tansill Const. Co., 638 So. 2d 149, 151 (Fla. 4th DCA 1994) (noting that when the basis of long-arm jurisdiction is that the defendant allegedly committed a tort in Florida, the court must first determine whether the plaintiff states a cause of action, but highlighting that this would not be true if the basis of long-arm jurisdiction was that the defendant did business in Florida); see also Wendt v. Horowitz, 822 So. 2d 1252, 1260 (Fla. 2002) ("[W]here the threshold question of personal jurisdiction turns on whether a tort is committed in Florida, the court necessarily must review the allegations of the complaint to determine if a cause of action is stated.") (cited authority omitted).

Significantly, the Florida Supreme Court has concluded that Florida courts do not have personal jurisdiction over corporate officers merely because they would have jurisdiction over the corporation itself. Doe v. Thompson, 620 So. 2d 1004, 1006 (Fla. 1993); see also Kitroser v. Hurt, 85 So. 3d 1084, 1088 (Fla. 2012) ("[A]cts performed by a person exclusively in his corporate capacity not in Florida but in a foreign state may not form the predicate for the exercise of personal jurisdiction over the employee in the forum state.") (emphasis in original). Indeed, the Court has stated that "a nonresident employee-defendant

who works only outside of Florida, commits no acts in Florida, and has no personal connection with Florida will not be subject to the personal jurisdiction of Florida courts simply because he … is a corporate officer or employee." Kitroser, 85 So. 3d at 1089.[11] Because the Florida long-arm statute will not confer personal jurisdiction over a nonresident corporate officer due solely to their status as a corporate officer, when a plaintiff offers no other basis for personal jurisdiction, a court need not determine whether the complaint states a cause of action for negligence. See Doe, 620 So. 2d at 1006 ("The instant case … presents the question whether long-arm jurisdiction exists over [the defendant], not whether a cause of action exists against him. [The plaintiff] may have a cause of action over [the defendant], but the court does not have personal jurisdiction over him in Florida.").

Here, Yun has offered no affidavits or other evidence to rebut Litke's attempt to establish personal jurisdiction. See generally Motion. Accordingly, the question under the personal jurisdiction burden-shifting framework is

_____

[11] Florida law recognizes an exception to the corporate shield doctrine for fraud and intentional torts committed outside of Florida. See Doe, 620 So. 2d at 1006 n.1; Kitroser, 85 So. 3d at 1088 n.3; see also LaFreniere v. Craig-Myers, 264 So. 3d 232, 239 (Fla. 1st DCA 2018) (for the intentional-tort exception to apply, "the conduct alleged must consist of intentional and tortious acts 'expressly aimed at' Florida, with knowledge by the defendant that it 'would have a potentially devastating impact'" on the plaintiff) (quoted authority omitted). While Litke does include intentional torts among her claims, the Court concludes this exception is inapplicable given Litke failed to allege that Yun took any intentional actions whatsoever.

whether Litke has established a <u>prima facie</u> case of personal jurisdiction sufficient to survive a directed verdict. <u>See</u> <u>Morris</u>, 843 F.2d at 492. As no statute authorizing nationwide service of process has been identified, <u>see generally</u> Operative Complaint; Response, the Court analyzes personal jurisdiction under Florida's long-arm statute. <u>See</u> <u>Delong Equip. Co.</u>, 840 F.2d at 847. Yun argues that Litke's allegations are insufficient because they do no more than allege Yun's "status as a corporate officer of PBE." Motion at 21. Under Florida law, Yun contends, "a non-resident defendant's status as a corporate officer or employee is insufficient to establish long-arm jurisdiction." <u>Id.</u> Litke does not respond to Yun's argument as to personal jurisdiction. <u>See generally</u> Response. Under <u>Doe</u> and <u>Kitroser</u>, Yun is correct.

In the Operative Complaint, Litke's only allegations about Yun are that he is the President and/or the CEO of PBE, Operative Complaint at 3, ¶ 10; that Cooke is Yun's employee, <u>id.</u> ¶¶ 16, 17, 22, 27, 28, 36; and that PBE is his company, <u>id.</u> ¶¶ 11, 20. Litke does not allege Yun worked in Florida, committed any action in Florida, or had any personal connection to Florida. <u>See generally</u> <u>id.</u> But Yun "will not be subject to the personal jurisdiction of Florida courts simply because he … is a corporate officer … ." <u>See</u> <u>Kitroser</u>, 85 So. 3d at 1089 (quoted). The Florida long-arm statute requires a corporate officer have some connection to Florida to be subject to personal jurisdiction here. In the

Operative Complaint, Litke simply does not allege that Yun has any connection to Florida or committed an act enumerated in the Florida Long-Arm Statute. As such, the Operative Complaint is due to be dismissed without prejudice to the extent it asserts causes of action against Yun.

B. Shotgun Pleading

PBE argues the Operative Complaint should be dismissed with prejudice because it remains an impermissible shotgun pleading. See Motion at 11–19. In support, PBE asserts that the Operative Complaint contains "[c]onclusory, vague, and immaterial facts not connected to any cause of action"; "incorporate[es] prior causes of action into subsequent ones"; is "utterly unclear as to what claims are asserted against which of the two named Defendants"; and contains "nonsensical, frivolous, and facially insufficient" claims. Motion at 13, 15–17. For the reasons discussed below, the Court concludes that the Operative Complaint is due to be dismissed as a shotgun pleading.

In the two prior orders directing Litke to replead, the Magistrate Judge and the undersigned took the opportunity to explain the pleading rules to Litke. See Order Denying Litke's Initial Motions; Order Striking the First Amended Complaint. In the Order Striking the First Amended Complaint, noting Litke's pro se status, the undersigned explained the law regarding shotgun pleadings

and what a plaintiff must do to comply with the requirements of the applicable

pleading rules:

> At the outset, the Court notes that pro se complaints are held to a less stringent standard than those drafted by an attorney. See Wright v. Newsome, 795 F.2d 964, 967 (11th Cir. 1986). Nevertheless, a pro se litigant is still required to "'conform to procedural rules.'" Riley v. Fairbanks Capital Corp., 222 F. App'x 897, 898 (11th Cir. 2007) (quoting Loren v. Sasser, 309 F.3d 1296, 1304 (11th Cir. 2002)).[12] The [Federal Rules] require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro. 8(a)(2). "'A complaint need not specify in detail the precise theory giving rise to recovery. All that is required is that the defendant be on notice as to the claim being asserted against him and the grounds on which it rests.'" Evans v. McClain of Ga., Inc., 131 F.3d 957, 964 n.2 (11th Cir. 1997) (citation omitted). Despite [Federal] Rule 8(a)'s liberal pleading requirement, "a complaint must still contain either direct or inferential allegations respecting all material elements of a cause of action." Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006) (emphasis omitted).
>
> Additionally, a complaint may not run afoul of the Eleventh Circuit's prohibition against shotgun pleadings, see generally Weiland v. Palm Beach County Sheriff's Office, 792 F.3d 1313, 1321–23 (11th Cir. 2015), which are commonly described as:
>
>> (1) complaints containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint; (2) complaints that do not commit the mortal sin of re-alleging all preceding counts but are

---

[12] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; (3) complaints that commit the sin of not separating into a different count each cause of action or claim for relief; and (4) complaints that assert multiple claims against multiple defendants without specifying which of the defendants are responsible for which actions or omissions, or which of the defendants the claim is brought against.

Williams v. Chronister, No. 8:23-cv-1759-TPB-AAS, 2023 WL 5432459, at *1 (M.D. Fla. Aug. 23, 2023) (citing Weiland, 792 F.3d at 1321–23)).[13] Notably, "[m]ore important than fitting neatly into these four roughly defined categories is the reason these types of pleadings are so problematic: they all fail 'to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.'" Id. (quoting Weiland, 792 F.3d at 1323) (footnote omitted). Thus, "[a] shotgun pleading is one where 'it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief' and the defendant therefore cannot be 'expected to frame a responsive pleading.'" Id. (quoting Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll., 77 F.3d 364, 366 (11th Cir. 1996)). For these reasons, the Eleventh Circuit has unequivocally instructed that shotgun pleadings of this sort are "altogether unacceptable." Cramer v. State of Fla., 117 F.3d 1258, 1263 (11th Cir. 1997); see also Cook v. Randolph County, 573 F.3d 1143, 1151 (11th Cir. 2009) ("We have had much to say about shotgun pleadings, none of which is favorable.") (collecting cases). Indeed, the Eleventh Circuit has engaged in a "thirty-year salvo of criticism aimed at shotgun pleadings, and there is no ceasefire in sight." Weiland, 792 F.3d at 1321 n.9 (collecting cases). This is so because "[s]hotgun pleadings, whether filed by plaintiff or defendant, exact an intolerable toll on the trial court's docket, lead to unnecessary and unchanneled discovery, and impose

---

[13] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

> unwarranted expense on the litigants, the court and the court's parajudicial personnel and resources." <u>Cramer</u>, 117 F.3d at 1263. Accordingly, when faced with the burden of deciphering a shotgun pleading, it is the trial court's obligation to strike the pleading on its own initiative, and force the plaintiff to replead to the extent possible under [Federal] Rule 11 … . <u>See id.</u> (admonishing district court for not striking shotgun complaint on its own initiative); <u>see also</u> <u>Weiland</u>, 792 F.3d at 1321 n.10 ("[W]e have also advised that when a defendant fails to [move for a more definite statement], the district court ought to take the initiative to dismiss or strike the shotgun pleading and give the plaintiff an opportunity to replead.").

Order Striking the First Amended Complaint at 2–5 (footnotes renumbered). This explanation from the Court followed the entry of the Order Denying Litke's Initial Motions, in which the Magistrate Judge specifically referred Litke to the requirements of the Federal and Local Rules.

Significantly, this Court has the "inherent authority to dismiss a complaint on shotgun-pleading grounds." <u>Sarhan v. Miami Dade Coll.</u>, 800 F. App'x 769, 772 (11th Cir. 2020). Before doing so, however, "the district court must first explain how the pleading violates the shotgun-pleading rule and give the plaintiff at least one opportunity to re-plead the complaint." <u>Arrington v. Green</u>, 757 F. App'x 796, 797 (11th Cir. 2018). Where the pleader fails to remedy the problem after being given a chance to do so, dismissal of a shotgun pleading with prejudice is warranted. <u>See</u> <u>Tran v. City of Holmes Beach</u>, 817 F. App'x 911, 915 (11th Cir. 2020); <u>see also</u> <u>Abdulla v. S. Bank</u>, 2023 WL 2988135, at *3

(11th Cir. 2023) (holding that a district court did not err in dismissing, with prejudice, state-law claims on shotgun-pleading grounds).

Here, the Magistrate Judge and the undersigned have each explained to Litke the pleading rules, including the Eleventh Circuit's prohibition on shotgun pleadings. <u>See</u> Order Denying Litke's Initial Motions; Order Striking the First Amended Complaint. But Litke's Operative Complaint still falls within the first, second, and fourth categories of impermissible shotgun pleadings and runs afoul of the requirements of the Federal Rules. Indeed, six of Litke's eleven counts expressly incorporate previous causes of action. Operative Complaint ¶¶ 50–53, 56, 57. These counts represent but a minor variation on the prototypical shotgun pleading. Litke has thus failed to heed the Court's previous instruction that she must "separate into different counts each cause of action she seeks to assert." <u>See</u> Order Striking the First Amended Complaint at 6 (quoted).

Additionally, while Litke includes eleven named causes of action in the Operative Complaint and incorporates particular factual allegations into some of them, twenty numbered allegations remain unconnected to any cause of action. It is neither the Court nor PBE's responsibility to study these unincorporated allegations and attempt to discern to which of Litke's claims they are directed. Moreover, despite this Court's admonition in the Order

Denying Litke's Initial Motions that attaching many pieces of evidence to a complaint flouts the Federal Rules' requirement of a "short, plain statement," in all but two of her counts, Litke incorporates all 51 pages of Exhibits. Even if the Exhibits helped in understanding Litke's claims, this marginal benefit would be outweighed by the time required to sift through all 51 pages and attempt to determine which pieces of evidence support which claims. See Barmapov v. Amuial, 986 F.3d 1321, 1327–28 (11th Cir. 2021) (Tjoflat, J., concurring) ("Our district courts have neither the manpower nor the time to sift through a morass of irrelevant facts in order to piece together claims" for plaintiffs.).

And Litke's allegations in the Operative Complaint are unclear as to which defendant Litke seeks to hold responsible for which alleged acts and omissions.[14] While Litke states in paragraph 10 that she "is holding … Yun … responsible for all of his Officers' and Employees' actions in this Claim" under a theory of respondeat superior, Operative Complaint ¶ 10, she does not incorporate this paragraph into any of her counts. Id. ¶¶ 47–57. And, in every count except for counts one and nine—which do not refer to

---

[14] While the Court has already concluded that any claims against Yun are due to be dismissed for lack of personal jurisdiction, how the Operative Complaint characterizes the scope of Yun's liability remains relevant to the disposition of the Motion because it further reveals Litke's inability or unwillingness to comply with Court orders and the applicable Federal Rules.

Defendants at all—Litke refers to a singular "Defendant." <u>Id.</u> ¶¶ 47–57. Litke's prayer for relief, meanwhile, demands judgment against the plural "Defendants." <u>Id.</u> at 23. Weighing the broad language in paragraph ten against the fact that Litke does not incorporate it into any specific cause of action and her inconsistent use of the singular versus the plural, the Court and Defendants are left guessing as to whether Litke is seeking to hold Yun liable coextensively with PBE, or if she has some other allocation of liability in mind.

Litke's arguments to the contrary come up short. Litke emphasizes the statement in paragraph ten that she "is holding" Yun responsible for the actions of "his" officers and employees. Response ¶ 76. The Court interprets this statement as an argument that every claim is directed at Yun under a <u>respondeat</u> <u>superior</u> theory. But in the Operative Complaint, Litke contradicts this contention because she does not incorporate paragraph ten into any of the counts. Litke also argues that "[a]ny, and all <u>Breaches of the Contract</u> is obviously against the Corporation." <u>Id.</u> ¶ 79 (emphasis in original). But in the Operative Complaint, Litke fails to make it clear that the breaches of contract are not asserted against Yun. Last, citing two articles, Litke asserts that the "Responsible Corporate Officer Doctrine" allows for the civil prosecution of corporate officers for "corporate actions that violate federal law." <u>Id.</u> ¶ 81. But—even putting aside the inapplicability of the doctrine—this theory of

liability is irrelevant to the question of whether the Operative Complaint constitutes a shotgun pleading. The Operative Complaint is deficient as a shotgun pleading not because any claim against Yun lacks a legal foundation, but because Litke fails to make it clear which claims she asserts against which Defendant and which actions form the basis of each claim.

On this record, the Court is convinced that Litke is unable or unwilling to comply with the Court's directives and the requirements of the Federal Rules and that nothing less than dismissal will suffice. See Sarhan, 800 F. App'x at 772. "Even pro se plaintiffs must comply with pleading rules or face judgment day," Tran, 817 F. App'x at 915, and for Litke, that day has come. Despite the Court's guidance on the problems with her Complaint and First Amended Complaint and two opportunities to fix those deficiencies, the Operative Complaint remains a shotgun pleading. Accordingly, as to the claims against PBE, the Operative Complaint is due to be dismissed with prejudice.[15] See Abdulla, 2023 WL 2988135, at * 2 (holding that a district court did not abuse

---

[15] Because the Court finds the Operative Complaint is due to be dismissed as to Yun for lack of personal jurisdiction, and as to PBE as a shotgun pleading, the Court does not reach Defendants' argument that the Operative Complaint also fails to state a claim upon which relief can be granted. See, e.g., Barmapov v. Amuial, 986 F.3d 1321, 1328 (11th Cir. 2021) (Tjoflat, J., concurring) ("[D]istrict courts are flatly forbidden from scouring shotgun complaints to craft a potentially viable claim for a plaintiff.").

its discretion in dismissing state-law claims with prejudice when the basis of the court's jurisdiction was diversity jurisdiction).[16]

Accordingly, it is

**ORDERED:**

1. Defendants' Motion to Dismiss Third Amended Complaint with Prejudice and Memorandum of Law (Doc. 64) is **GRANTED IN PART** and **DENIED IN PART**.

   A. The Motion is **GRANTED** to the extent that all claims against Dae Kee Yun are **dismissed without prejudice**.

   B. The Motion is further **GRANTED** to the extent that all claims brought against P.B. Express, Inc. are **dismissed with prejudice**.

   C. In all other respects the Motion is **DENIED**.

2. The Clerk of the Court is directed to enter **judgment** in accordance with the directives of this Order.

---

[16] In <u>Abdulla</u>, the Court distinguished <u>Vibe Micro, Inc. v. Shabanets</u>. <u>See</u> <u>Abdulla</u>, 2023 WL 2988135, at *3. In <u>Vibe Micro</u>, the Eleventh Circuit held that a district court erred by dismissing with prejudice state-law claims on shotgun pleading grounds when the basis of the court's jurisdiction over the state-law claims was supplemental jurisdiction. 878 F.3d 1291, 1296–97 (11th Cir. 2018). The court instructed that the district court should have dismissed the state-law claims without prejudice to refiling in state court.

3. The Clerk of the Court is further **directed** to terminate any pending motions and deadlines as moot and close the file.

**DONE AND ORDERED** in Jacksonville, Florida this 2nd day of October, 2024.

**MARCIA MORALES HOWARD**
United States District Judge

lc33

Copies to:
Counsel of Record

Melissa Litke
litkemd@gmail.com
7990 Kings Forest Dr.
Jacksonville, FL 32219